[No. 5130–1.   Division One.   March 13, 1978.]

ACCESS ROAD BUILDERS, *Appellant,* v. CHRISTENSON
ELECTRICAL CONTRACTING ENGINEERING COMPANY,
*Respondent.*

*Hoover & Donais* and *John C. Hoover,* for appellant.

*Thom, Navoni, Hoff, Pierson & Ryder, Phillip L. Thom,* and *Dale L. Kingman,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

This is an appeal from an order dismissing the case for lack of jurisdiction.

Access Road Builders, a Washington corporation (Access), filed suit in the Superior Court of the State of Washington for King County against Christenson Electrical Contracting Engineering Company, an Oregon corporation (Christenson). By its suit, Access sought damages for breach of contract. It alleged that it had a subcontract with Christenson to do work for Christenson in constructing the Bonneville Power Administration's Maple Valley Substation in King County, Washington.

Christenson was served pursuant to the provisions of this state's long–arm statute, RCW 4.28.185. Christenson moved to dismiss for lack of jurisdiction and the trial court determined the motion on affidavits. Two affidavits were filed, one on behalf of Access and the other on behalf of Christenson.

The affidavit of Access' president said in part:

My company came in contract [*sic*] with the defendants by telephone calls, and there were a number of telephone calls from Portland, Oregon to my office at 2135 M Street Southeast, Auburn, Washington, requesting that I bid on a project, which project was to, and did, take place in King County, State of Washington. The project of which I was to bid on involved the Maple Street [*sic*] substation, and I enclose copies of the invitation to bid. At the request of defendants, I submitted bid figures,

and those bid figures were used by defendant in bidding the project.

The invitation to bid attached to that affidavit contained Bonneville's Portland, Oregon office address in block 5 of the first page of the form. Then in block 6 of the form, it also provided:

6. ADMINISTERED BY (if other than block 5)
Branch of Construction
J. D. Ross Complex
P. O. Box 491
Vancouver, Washington 98660

The affidavit of Christenson's supervisor related: Christenson's dealings with Bonneville were with Bonneville's Portland, Oregon office; Christenson had not solicited a proposal from Access but received one by phone a few days prior to the Portland bid openings; Christenson was successful in obtaining the Bonneville contract; although he had discussed the bid with the president of Access, who was in Portland for the bid opening, no contract was finalized between Christenson and Access; during the month following the bid opening, he placed a number of calls to the president of Access concerning some unresolved matters relating to the construction work under discussion, and some of which calls were not returned; neither he nor any other person from Christenson had any meeting with Access personnel in the state of Washington; and Christenson received notice from Bonneville to proceed with work on the Maple Valley project a little over a month following the bid openings and thereupon started work through a subcontractor other than Access.

Christenson's motion to dismiss for lack of jurisdiction was granted by the trial court. Access appeals. One issue is presented.

ISSUE

Under the facts shown, should the Washington courts assume jurisdiction over a foreign corporation on the basis that such corporation had the necessary "minimum contacts" within this state to establish jurisdiction here?

## DECISION

CONCLUSION. Based on the uncontroverted facts presented, the jurisdictional power to adjudicate the issues between the parties exists in the Washington courts.

Our long–arm statute provides:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
>
> (a) The transaction of any business within this state;

RCW 4.28.185(1) (part). There has been a considerable amount of litigation under this statute. *See* P. Trautman, *Long–Arm and Quasi In Rem Jurisdiction in Washington,* 51 Wash. L. Rev. 1 (1975–76).

■ The test for assuming jurisdiction under this statute has recently been summarized. After discussing the constitutional necessity of a nonresident having certain "minimal contacts" with the forum state, the court reiterated the following rules:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. *Deutsch v. West Coast Mach. Co.,* 80 Wn.2d 707, 497 P.2d 1311 (1972); *Bowen v. Bateman,* 76 Wn.2d 567, 458 P.2d 269 (1969); *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963).

*Lewis v. Curry College,* 89 Wn.2d 565, 568–69, 573 P.2d 1312 (1978).

■■ The party asserting jurisdiction has the burden of establishing it if the jurisdictional allegations are appropriately challenged. *Williams v. Canadian Fishing Co.,* 8 Wn. App. 765, 767, 509 P.2d 64 (1973); *Taylor v. Portland Paramount Corp.,* 383 F.2d 634, 639 (9th Cir. 1967). Lack of jurisdiction can, of course, be raised by motion. CR 12(b). If, as here, matters outside the pleadings are received by the trial court in connection with such a motion then the motion will be treated as one for summary judgment. 2A J. Moore, Fed. Prac. ¶ 12.09[3], at 2302 (2d ed. 1975). In reviewing the dismissal of a party on a motion to dismiss for lack of jurisdiction, we will therefore view the facts in the light most favorable to the party opposing dismissal. *Puget Sound Bulb Exch. v. Metal Bldgs. Insulation, Inc.,* 9 Wn. App. 284, 288-89, 513 P.2d 102 (1973).

In the present case, Christenson argues that we cannot appropriately consider the statement made in the affidavit of the president of Access that he was solicited by phone to bid on the project in the face of the affidavit by Christenson's supervisor controverting that statement. In support of that position, it cites *Erickson v. Barnes,* 6 Wn.2d 251, 259, 107 P.2d 348 (1940), which holds that uncorroborated admissions testified to by an adverse party are not looked on with favor by the courts, and when denied by the party alleged to have made them, will not carry the issue to which they relate to the jury. We are not required to determine whether that rule pertains in this situation or not since even under the uncontroverted facts contained in the affidavits, Christenson is subject to the jurisdiction of the courts of this state.

Christenson built a power substation in King County, Washington under a construction contract administered by Bonneville's Vancouver, Washington office. In addition, there were a number of telephonic communications between Access' Auburn, Washington office and Christenson's Portland, Oregon office concerning whether or not

Access would do subcontracting work on the job for Christenson. This satisfies the first requirement, that Christenson must "purposefully do some act or consummate some transaction in the forum state."

The breach of contract cause of action pleaded by Access clearly satisfies the second requirement, that "the cause of action must arise from, or be connected with, such act or transaction."

As to the third requirement for assuming jurisdiction, Christenson came into this state and built an approximately $370,000 construction project. In doing this, the company dealt with some Washington suppliers. Assumption of jurisdiction by this state for the purpose of determining whether there was a contract between Christenson and Access, and if so, whether it was breached or not, does "not offend traditional notions of fair play and substantial justice." Under these circumstances, if there was a contract, whether or not it was actually entered into in Oregon is not by itself determinative of whether jurisdiction exists in the courts of this state. *See Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 840, 435 P.2d 626 (1967); *International Sales & Lease, Inc. v. Seven Bar Flying Serv., Inc.*, 12 Wn. App. 894, 898, 533 P.2d 445 (1975); 2 L. Orland, Wash. Prac. § 17(3) (3d ed. 1972).

As the United States Supreme Court expressed it in *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945),

> to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

Reversed and remanded for further proceedings consis-

tent with this opinion.

WILLIAMS and DORE, JJ., concur.